# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## No. 13-2418

## ANTHONY BUCCI,
**Petitioner/Bucci**

v.

## UNITED STATES OF AMERICA,
**Respondent/Appellee**

_____

### REPLY BRIEF FOR PETITIONER/APPELLANT BUCCI

_____

For Petitioner/Appellant Bucci

Inga L. Parsons
BBO 675211
Attorney at Law
3 Bessom Street, No. 234
Marblehead, MA  01945
781-581-2262 (o)
781-842-1430 (f)
781-910-1523 (c)
Inga@IngaParsonsLaw.com

dated: November 17, 2014

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                      i

REPLY ARGUMENT                                                           1

**I.  BUCCI'S PETITION WAS A FIRST PETITION STATUS FILING AND IS TIMELY**                                         1

**II.  FAILURE TO SEEK A PLEA UNDER THE CIRCUMSTANCES OF THIS CASE WAS INEFFECTIVE ASSISTANCE OF COUNSEL**                                 10

**III.  BUCCI HAS SHOWN PREJUDICE AND ANY ISSUES THAT MIGHT REMAIN SHOULD BE RESOLVED THROUGH A HEARING**                                     19

CONCLUSION                                                              22

# TABLE OF AUTHORITIES

**Cases**

*Ahmed v. Rosenblatt*,
118 F.3d 886 (1st Cir. 1997). . . . . . . . . . . . . . . . . . .    3

*Arave v. Hoffman,*
455 F.3d 926 (9th Cir. 2006) . . . . . . . . . . . . . . . .    19

*Benchoff v. Colleran*,
404 F.3d 812 (3d Cir.2005) . . . . . . . . . . . . . . . . . .    5

*Brown v. Doe*,
2 F.3d 1236 (2d Cir. 1993) . . . . . . . . . . . . . . . . . .    12

*Dutil v. Murphy*,
550 F.3d 154 (1st Cir. 2008) . . . . . . . . . . . . . . . . . .    3

*Erickson v. Pardus,*
551 U.S. 89, 94 (2007) . . . . . . . . . . . . . . . . . . . . .    3

*Hawkman v. Parratt,*
661 F.2d 1161 (8th Cir. 1981) . . . . . . . . . . . . . . . .    7

*Hill v. Alaska,* 297 F.3d 895,    7
(9th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*In re Cain,*
137 F.3d 236. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5, 6, 7

*Johnson v. United States,*
544 U.S. 295, 302 (2005) . . . . . . . . . . . . . . . . . . . .    2, 3, 4

*Lafler v. Cooper*,
132 S.Ct. 1376 (2012) . . . . . . . . . . . . . . . . . . . . . . .    11, 15-20

*Lipson v. United States,*
223 F.3d 942 (7th Cir. 2000) . . . . . . . . . . . . . . . . .    13

*Medberry v. Crosby,*
 351 F.3d 1049 (11th Cir.2003) . . . . . . . . . . . . . . . . . .    7

*Merzbacher v. Shearin,*
 706 F.3d 356 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . .    10

*Missouri v. Frye,*
 132 S.Ct. 1399 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . .    11, 12, 15

*Panetti v. Quarterman,*
 551 U.S. 930 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . .. . .    9

*Pratt v. United States,*
 129 F.3d 54, 61 (1st Cir.1997) . . . . . . . . . . . . . . . . . . . . .    8

*Singleton v. Norris,*
 319 F.3d 1018 (8th Cir.2003) . . . . . . . . . . . . . . . . . . . . .    7

*Stewart v. United States,*
 646 F.3d 856 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . .    3, 4, 5

*Strickland v. Washington,*
 466 U.S. 688 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . .    *passim*

*Trenkler v. United States,*
 536 F.3d 85, 96 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . . .    8

*United States v. Bass,*
 864 F.Supp.2d 353 (E.D.Pa. 2012) . . . . . . . . . . . . . . . . . .    4

*United States v. Downs-Moses,*
 329 F.3d 253 (1st Cir. 2003). . . . . . . . . . . . . . . . . . . . . .    14

*United States v. Jolley,*
 252 Fed. Appx. 669 (5th Cir. 2007) . . . . . . . . . . . . . . . . .    11, 12

*United States v. Pender,*
    514 Fed.Appx. 359 (Md. 2013) . . . . . . . . . . . . . . .    12-13, 17

*Weatherford v. Bursey,*
  429 U.S. 545 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

## CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Const., Amend. VI . . . . . . . . . . . . . . . . . . . . . . .    *passim*

28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . .    *passim*

28 U.S.C. § 2255(f)(4) . . . . . . . . . . . . . . . . . . . . . . . .    2, 3, 7

18 U.S.C. § 851. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18-20

U.S.S.C. § 3E1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

# REPLY ARGUMENT

## I.

## BUCCI'S PETITION WAS A FIRST PETITION STATUS FILING AND IS TIMELY

The government's, opposition, like its summary disposition, rests heavily on the erroneous premise and assumption that this was an unauthorized second or successive petition and construing it as such. *See* Gov. Br. at 1-27.   What the government neglects to address with any real vigor, is the fact that the district court did not treat this as a second or successive petition.  The only waiver in this case is by the government, which did not seek a clarification, rehearing, or appeal of the district court's decision to treat it on its merits.

Instead, the government ridiculously asserts that somehow Bucci should have been required to address the issue of successive petition even though the court considered the motion properly before it because Bucci noted (accurately) that the district court did not treat it as a successive petition.  *See* Gov. Br. at 10 n. 7.

In this case, it is undisputed that Judge Young, the district court judge, no stranger to habeas petitions or their requirements, was presented with a number of petitions from Bucci during a similar time period as acknowledged by the government.  The district court denied certain petitions on the basis of lack of jurisdiction determining that they were successive or second petitions.  The district

court clearly knew the standards and distinguished between the petitions and right handled it on a first petition basis.

In fact, the government conceded that the district court did not dismiss this issue on the basis of unauthorized second or successive petition (as he did others) but treated the motion as properly before it. *See* Gov. Br. at 7. The government did not appeal that determination, seek a clarification, or otherwise challenge the district court determination on the merits. If there is any waiver as to that claim, it is the government's forfeiture in failing to appeal that determination, especially as the government was well aware the district court clearly knew the difference having noted that in other petitions filed by Bucci that the district court declined to rule because the motion was second or successive. *See* Gov. Br. at 8 n. 6.

Even if this Court were broadly to interpret the waiver in terms of jurisdiction only and permit it to go forward, because this petition is brought pursuant to 28 U.S.C. 2255(f)(4), advancing a new fact that "could not have been discovered through the exercise of due diligence" at the time of Bucci's initial 28 U.S.C. § 2255 filing, this petition was properly viewed as an initial petition under the facts of this case and not as a "successive or second" petition. *See Johnson v. United States,* 544 U.S. 295, 302 (2005).

Bucci's petition raises issues that could not have been raised in any prior petition and must be treated on a first petition footing as the district court correctly

2

did due to the nature of the facts. Furthermore, courts are solicitous of the obstacles that pro se litigants face and though not exempt from procedurals rules, courts should hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects. *See Dutil v. Murphy*, 550 F.3d 154 (1st Cir. 2008)*; see als*o *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). *See also Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (courts should construe the pro se pleading liberally.). Bucci's petition raises issues that could not have been raised in any prior petition and must be treated on a first petition footing as the district court correctly did. *See Johnson v. United States,* 544 U.S. 295, 302 (2005).

In *Johnson,* the Supreme Court held that the state court's vacatur of a predicate conviction is a new "fact" that triggers a fresh one-year statute of limitations under § 2255(f), so long as the defendant exercised due diligence in seeking that order. *See id.* Thus, *Johnson* established that the basis for a claim challenging a sentence predicated on faulty state convictions arises when the order vacating those predicate convictions issues. *Id.* at 306–07. Accordingly, the vacatur order gives a defendant both the basis to challenge the enhanced federal sentence and a new one-year period in which to pursue that challenge. *See, also, Stewart v. United States*, 646 F.3d 856 (11th Cir. 2011) (a new fact which occurs

3

subsequent to the filing of an original 2255 motion is cognizable under a new first 2255 motion).

The Third Circuit made a similar pronouncement as observed by the district court in *United States v. Bass*, 864 F.Supp.2d 353 (E.D.Pa. 2012). In that case, the district court observed that the Third Circuit had already ruled that Bass' petition was not a second or successive habeas motion in the Circuit's holding that the "[t]he foregoing application under 28 U.S.C. § 2244 to file a second or successive 28 U.S.C. § 2255 motion is denied as unnecessary.... [I]t appears that [defendant's] proposed § 2255 motion rests on facts that were not available when he filed his first § 2255 motion in federal court." The vacatur of the New Jersey conviction was not known to the defendant until "well after" defendant filed his first § 2255 motion. Accordingly, the Third Circuit found, as observed by the district court, that "Bass's § 2255 Motion is not a second or successive habeas motion under § 2255(h)." The facts were not available to Bucci at that time.

The *Bass* court relied on *Stewart v. United States,* 646 F.3d 856 (11th Cir.2011), where the Eleventh Circuit explained that "[p]articularly when a petitioner raises a claim that could not have been raised in a prior habeas petition, courts have forgone a literal reading of 'second or successive.' " *Id.* at 860. The *Stewart* court then held, "[b]ecause the basis for [defendant's] *Johnson* claim did not exist before his proceedings on his initial§

4

2255 motion concluded, [defendant's] numerically second motion is not 'second or successive,' and § 2255(h)'s gatekeeping provision does not apply." *Id.* at 865. The basis for the claim for Bucci is discovering that his attorney had failed to seek a plea offer though asked repeatedly to do so and then misrepresented that the government was not interested, when, in fact, the government had not been approached at all.

The Third Circuit also relied on *Benchoff v. Colleran,* which held that § 2255(h) bars only claims that could have been raised in a prior habeas motion. *See Benchoff v. Colleran*, 404 F.3d 812, 817 (3d Cir.2005) (" '[A] prisoner's application is not second or successive simply because it follows an earlier federal petition.' ") (quoting *In re Cain,* 137 F.3d 234, 235 (5th Cir.1998)). This "narrow reading" of § 2255(h) is in line with the reasoning in *Stewart,* which also declined to read "second or successive" in AEDPA literally. *See Stewart, supra*.

As the district court noted in *Benchoff,* the Third Circuit interpreted "second or successive" with reference to the pre-AEDPA "abuse-of-the-writ doctrine." *See Benchoff*, 404 F.3d at 817. Under the abuse-of-the-writ doctrine, a habeas motion would be denied "where the subsequent petition raised a habeas claim which could have been raised in an earlier petition and there was no legitimate excuse for failure to do so." *Id.* at16. The *Benchoff* court held that a § 2255 motion was "second or

successive" only if it raised claims that could have been asserted in the prior habeas

motion.  Specifically:

> We are supported in this view by the fact that, notwithstanding the AEDPA's passage, our sister circuits uniformly have continued to interpret "second or successive" with reference to the pre-AEDPA "abuse of the writ" doctrine. *See Crouch v. Norris,* 251 F.3d 720, 723 (8th Cir.2001) ("[I]t is generally acknowledged that the interpretation of 'second or successive' involves the application of pre-AEDPA abuse of the writ principles."); *Muniz v. United States,* 236 F.3d 122, 127 (2d Cir.2001) (using the "equitable principles underlying the 'abuse of the writ' doctrine" to determine whether a petition is "second or successive"); *United States v. Barrett,* 178 F.3d 34, 44 (1st Cir.1999) ("The core of AEDPA restrictions on second or successive § 2255 petitions is related to the longstanding judicial and statutory restrictions ... known as the 'abuse of the writ' doctrine."); *see also In re Cain,* 137 F.3d 234, 235 (5th Cir.1998) (per curiam); *Reeves v. Little,* 120 F.3d 1136, 1139 (10th Cir.1997) (per curiam).
>
> Moreover, the abuse of the writ doctrine's ongoing validity as a means of interpreting "second and successive" has been strongly suggested by the Supreme Court, which has implied that § 2244 is a statutory extension and codification of the equitable principles of the doctrine. *See Slack v. McDaniel,* 529 U.S. 473, 486, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (suggesting that the definition of second or successive would be same under AEDPA as under pre-AEDPA law); *Felker,* 518 U.S. at 664, 116 S.Ct. 2333 (finding that § 2244 codified and added restrictions that were "well within the compass of th [e] evolutionary process" of the abuse of the writ doctrine, which is a "complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions") (quoting *McCleskey,* 499 U.S. at 489, 111 S.Ct. 1454).
>
> Informed by the teachings of the Supreme Court and our sister circuits, therefore, we [] look to principles of the abuse of the writ doctrine in defining "second and successive."

The court in *Benchoff* went on to explain that "[t]he abuse of the writ

doctrine dictates that we should treat the term 'second and successive' as a term of

art, which is not to be read literally." A subsequent petition is "clearly *not* a 'second or successive' petition within the meaning of § 2244 if the claim had not arisen or could not have been raised at the time of the prior petition. *See id,* (citing *Singleton v. Norris,* 319 F.3d 1018, 1023 (8th Cir.2003); *Medberry v. Crosby,* 351 F.3d 1049, 1062 (11th Cir.2003); *Hill v. Alaska,* 297 F.3d 895, 898 (9th Cir.2002); *In re Cain,* 137 F.3d at 236)).

A similar reasoning was set forth by Judge Ponsor in a 2255 petition reviewed in *Matos v. United States*, 2013 WL 2477259 (D.Mass. June 10, 2013) (Posnor, J.). In reviewing the defendant's second 2255 petition, Judge Ponsor analyzed as follows:

> It cannot be denied that this is the second time that petitioner has asked this court for relief under § 2255. While the Supreme Court has made clear that not every second petition for habeas relief should be counted as a successive petition for AEDPA purposes, *see Stewart v. Martinez–Villareal,* 523 U.S. 637, 646 (1998), the First Circuit has made it clear that *all* collateral claims must be raised in a petitioner's first § 2255 motion, even if the first motion only seeks to have a notice of appeal reinstated. *Pratt v. United States,* 129 F.3d 54, 61 (1ˢᵗ Cir.1997), *cert. denied,* 523 U.S. 1123 (1998).

The district judge went on to explain that:

> The Supreme Court and First Circuit have noted limited exceptions to this rule: (1) if the initial petition was dismissed for failure to exhaust state remedies, *Slack v. McDaniel,* 529 U.S. 473 (2000); (2) if the original petition did not produce an adjudication on the merits, *Pratt,* 129 F.3d at 60; (3) where the later petition raised the same grounds as a previous petition that had been dismissed as premature, *Stewart v. Martinez–Villareal,* 523 U.S.

637, 643 (1998); and (4) **if the second petition pointed to a claim of error unavailable the first time around,** *Pratt*, **129 F.3d at 62.**

(Emphasis added).

Bucci's petition is brought timely under 2255(f)(4) and is not subject to the gate keeping requirements of 2255(h) or that standard. The petition on this issue pointed to a claim of error unavailable the first time around and therefore was properly treated as an initial petition by the district court. Again, the district court clearly knew the difference given his rejection of Bucci's other petition on the grounds that it constituted a second or successive petition and the government did not appeal that decision.

*Trenkler v. United States*, 536 F.3d 85, 96 (1st Cir. 2008) relied on by the government (Gov. Br. at 9) does not preclude treating this petition as an initial petition. *Trenkler* involved whether the defendant's Coram Nobis Petition should be treated as a successive 2255 petition, and , thus, subject to the same gatekeeping functions.

Similarly, in *Pratt v. United States*, 129 F.3d 54 (1st Cir. 1977), also relied on by the government, the decision revolved around the application of AEDPA to pre AEDPA filings as to the issue of second or successive petitions involving a claim of retroactivity; not whether the new fact should constitute an initial petition. In short, the government is wrong in its assumption that the district court cannot treat

the motion as an initial petition and its entire motion, including the standards it relies on, are in error.

Bucci is not raising a second issue that could have been raised in his original petition because the facts that give rise to his claim were discovered as set out in detail in Bucci's appellant brief which is incorporated herein as if fully set forth. It should be emphasized that Bucci is not abusing the writ doctrine, but instead, enforcing his rights as provided by law.

Because the successive standard involves analysis under actual innocence; it would eviscerate sixth amendment rights that attach to guilty pleas shielding an ineffective attorney at the critical plea stage by behavior that is the result of misrepresentations to a client who had no reason to doubt that this attorney had in fact spoken to prosecutors as he represented. In other words, as Judge Young no doubt fully understood, the issue is not whether Bucci was factually innocent; the issue is whether counsel was ineffective. Those facts were new to Bucci and thus merited a first petition analysis. In the words of the Supreme Court in *Panetti v. Quarterman*, 551 U.S. 930, 947 (2007) it would "not make sense" to consider a claim related to plea bargain ineffectiveness under an actual innocence standard. This Court necessarily must treat this as a first petition status, as the district court did.

Finally, Bucci's petition was brought within one year from discovery, as set forth in detail in Bucci's main brief and the government does not provide any real basis to dispute this other than speculation. To the extent there is any dispute as to these issues, the matter should proceed through a hearing as requested.

## II.

### FAILURE TO SEEK A PLEA UNDER THE CIRCUMSTANCES OF THIS CASE WAS INEFFECTIVE ASSISTANCE OF COUNSEL

In this case, not only did the attorney *not* pursue plea negotiations with the government as requested by his client; he actually advised Bucci that the government was not interested in negotiation which was untrue. The cases cited by the government for what is required when an offer is given are not illuminating where the issue is counsel's failure to even go down that road despite explicit instructions by his client. By this Court vacating the conviction such speculation is not required. The conviction should be vacated so that Bucci can seek a resolution and settlement in the position he was in prior to the first trial which would remedy his counsel's ineffectiveness.

For example, in *Merzbacher v. Shearin*, 706 F.3d 356 (4th Cir. 2013) cited by the government (*see* Govt. Br. at 34), the Fourth Circuit upheld the state's determination (after hearing) that there was evidence that the defendant would not

have accepted the plea which was the essential finding for affirmance.  Bucci

wanted to resolve this without trial and instructed his attorney to work out a deal.

His attorney, for no strategic or reasonable reason, refused to do so and then misled

his client in to believing he had done so which clearly impacted Bucci's decision to

go to trial.

Bucci's petition for claiming ineffective assistance of counsel relied

on a number of cases, including,  *Missouri v. Frye* , ___U.S. _____132 S.Ct

1399, 1407 (2012)  which explained the critical nature of the plea bargain

process and how central the system is to the criminal justice system and

defendant's rights:

> The reality is that plea bargains have become so central to the
> administration of the criminal justice system that defense counsel have
> responsibilities in the plea bargain process, responsibilities that
> must be met to render the adequate assistance of counsel that the Sixth
> Amendment requires in the criminal process at critical stages. Because ours
> "is for the most part a system of pleas, not a system of trials," *Lafler, post,*
> at 1388, 132 S.Ct. 1376, it is insufficient simply to point
> to the guarantee of a fair trial as a backstop that inoculates any errors in the
> pretrial process. "To a large extent ... horse trading [between prosecutor and
> defense counsel] determines who goes to jail and for how long. That is what
> plea bargaining is. It is not some adjunct to the criminal justice system; it *is*
> the criminal justice system." Scott &
> Stuntz, Plea Bargaining as Contract, 101 Yale L. J. 1909, 1912
> (1992). See also Barkow, Separation of Powers and the Criminal Law,
> 58 Stan. L.Rev. 989, 1034 (2006) ("[Defendants] who do take their case
> to trial and lose receive longer sentences than even Congress or the
> prosecutor might think appropriate, because the longer sentences exist on
> the books largely for bargaining purposes. This often results in
> individuals who accept a plea bargain receiving shorter sentences

than other individuals who are less morally culpable but take a chance and go to trial" (footnote omitted)). In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.

*Frye*, 132 S.Ct at 1407.

In *United States v. Jolley*, 252 Fed.Appx. 669 (5th Cir. 2007) (unpublished), none other than the Fifth Circuit vacated the decision of the district court denying a habeas petition that had been brought on the grounds that defense counsel had failed to seek out a plea offer from the government, and remanded the case for further evidentiary hearing. In so doing, the Fifth Circuit was clearly concerned that the defense attorney had not sought out a plea which was partially corroborated by the lack of a plea offer in the prosecutor's records. *See id.* at *2. The government claims that because there was an additional issue involved as to how the Sentencing Guidelines would operate in his case, makes Jolley distinguishable, but does nothing to do undermine the concern courts have, and should have, when attorneys fail to seek a plea bargain especially when asked by their clients to do so.

In *United States v. Pender*, 514 Fed.Appx. 359 (Md. 2013) (unpublished) the Fourth Circuit was persuaded that although there is no constitutional right to a plea agreement, counsel is still required to be a "reasonably effective advocate" regarding the decision to seek a plea bargain. Specifically:

> When the district court decided Pender's motion, it had before it Pender's
> sworn assertion that his counsel failed to pursue a plea agreement when
> faced with a very weak case for trial and a mandatory life sentence upon
> conviction. The court also had the Government's unsworn, unauthenticated
> assertion that Pender had been offered a
> plea agreement that he personally rejected. The district court correctly
> noted that there is no constitutional right to a plea agreement and that
> the decision to initiate plea negotiations is a strategic decision within the
> purview of defense counsel. *See Weatherford v. Bursey,* 429 U.S.
> 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *Hawkman v. Parratt,*
> 661 F.2d 1161, 1171 (8th Cir.1981). However, counsel is still required
> to be a "reasonably effective advocate" regarding the decision to seek a
> plea bargain. *Brown v. Doe,* 2 F.3d 1236, 1246 (2d Cir.1993). Thus, if
> Pender could show, as he alleged, that there was no reasoned strategy to
> his attorney's decision not to pursue a plea bargain, we conclude that
> Pender would have satisfied the first *Strickland* prong and shown that his
> attorney's actions were unreasonable.

*Id.* at *1.

The government tries to argue that this case is somehow not helpful because in that case uniquely the government agreed they would have given a beneficial plea agreement.  Here the government had no such opportunity *due to the ineffectiveness of counsel.*  The government does not dispute that they were not even contacted discuss an offer.  Accordingly, Bucci has an even stronger case than in *Pender*.

In *Lipson v. United States,* 233 F.3d 942 (7th Cir. 2000), the Seventh Circuit determined that the failure to seek a plea offer could be an adverse effect resulting from a conflict of interest by the defendant's counsel.  *Id.* at 947.

13

Moreover, this was not a "strategic choices made after thorough investigation of law and facts relevant to plausible options" which are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. Natola, the trial counsel, did not investigate a plea. He confirmed to Baird that he had been directed to do so and "ignored" the direction. In Bucci's case, not only was there no reasoned strategy, but, instead, defense counsel misinformed Bucci that the government had no interest in plea bargaining, when, in fact, defense counsel had never initiated the discussions, despite being directed by Bucci to do so on at least two occasions. This misinformed Bucci with respect to the decision to go to trial.

The First Circuit was confronted with this issue in *United States v. Downs-Moses*, 329 F.3d 253 (1st Cir. 2003). This Circuit did not dismiss the claims that counsel had failed to seek out a plea bargain as untenable, but found the claims to be a "mixed question of law and fact for which we have virtually no record support. We therefore decline to address this claim on appeal, without prejudice to Downs asserting it in a motion for relief under 28 U.S.C. § 2255." *Id.* at 269.

To the extent there is any doubt as to what occurred in Bucci's case, the district court should have held a hearing. In the absence of such, there was sufficient evidence on the record (and no contrary evidence in the record) to find that defense counsel not only failed to initiate plea discussions despite being asked to do so, as was confirmed by the prosecutor and Natola himself to

14

Baird, but Natola misrepresented to Bucci that he had initiated such negotiations and claimed erroneously that the government had been unwilling to negotiate.

The analysis in *Frye* is instructive. Where in *Frye*, the attorney's failure to act was from the prosecutor to the defendant, in Bucci's case, the failure to act is from the defendant to the prosecutor—but it is the same concept with the same impact. Bucci specifically directed his counsel to investigate a plea bargain. Counsel chose to "ignore" that direction. When civil counsel spoke with the prosecutor, the prosecutor did not say that the government refused to plea bargain. The prosecutor advised that they did not offer anything because there was never a request from the defense to plea bargain. This takes this case out of the "sandbagging" concern where the only facts are those between the defense counsel and the defendant and the parties might hedge their bets by not discussing the plea offer but then having the defendant proceed to trial. Here, the facts come from a different counsel (a civil estate lawyer) who had conversations with the prosecutor which was confirmed by the trial counsel.

Furthermore, the fact that Bucci went to trial does not cure the defect. The Supreme Court in *Frye* made clear that a defendant can show prejudice under *Strickland* even where there is no deficient performance at trial. *Frye*, 132 S.Ct. at 1399; *see also Lafler v. Cooper*, 132 S.Ct. 1376, 1385, 1388 (2012) (the fact that a defendant might be guilty "does not mean he was not entitled by

the Sixth Amendment to effective assistance or that he suffered no prejudice

from his attorney's deficient performance during plea negotiations.").

  The Supreme Court has not followed a "rigid rule" that an otherwise fair

trial (though Bucci challenged much of the trial on appeal) remedies errors not

occurring at the trial itself. *Lafler*, 132 S.Ct. at 1386. In *Lafler*, the Court

determined that the defendant went to trial rather than accept a

plea deal which was the result of ineffective assistance at the plea stage. *Id*. The

sentence the defendant in *Lafler* received after trial was 3 ½ more times severe

than what he would have likely received by pleading guilty. *Id.* "Even if the trial

itself is free from constitutional flaw, the defendant who

goes to trial instead of taking a more favorable plea may be prejudiced from

either a conviction on more serious counts or imposition of a more severe

sentence." *Id.*

  As the *Lafler* Court concluded "[t]he favorable sentence that eluded the

defendant in the criminal proceeding appears to be the sentence he or others in his

position would have received in the ordinary course, absent the failings of

counsel." *Id.* Although the Court in *Lafler* reminded that there is no right to a

plea offer, and that if no plea offer is made the issue raised does not arise, in

Bucci's case, the analysis of *Lafler* is applicable because the lack of a plea offer

(and the decision to go to trial) was the result of the deficiency of counsel failing

to initiate a plea offer and misinforming the defendant. *See Lafler*, 132 S.Ct. at 1387.

Counsel's conduct fell below acceptable standards and practices, especially given that he misinformed his client that the government was not willing to negotiate making the decision by Bucci to go to trial uninformed. It is similar to what occurred in *Lafler*, where the Supreme Court vacated a conviction after trial where trial counsel had misinformed the defendant that the prosecution would be unable to establish intent to murder because victim had been shot below the waist. *Lafler*, 132 S.Ct. at 1374. In Bucci's case, counsel's conduct so undermined the proper functioning of the adversarial process that it cannot, in this case, be relied on as having produced a just result. *See Strickland*, 466 U.S. at 686 (cited in *Lafler*, 132 S.Ct. at 1388).

As the court in *United States v. Pender* explained:

> While counsel does not have a general duty to initiate plea negotiations, here there is no evidence that counsel was acting reasonably or strategically, and the decision to forego plea bargaining exposed Pender to a mandatory life sentence. We find that the record and Pender's presumably true allegations considered together were sufficient to raise a material issue of fact as to whether Pender's attorney's actions were unreasonable in failing to pursue plea negotiations.

Ineffective assistance of counsel claims are not about innocence; they are about duty to a defendant to provide effective counsel at a critical stage in the

17

proceeding which includes plea bargaining.  Put simply there was no reasonable or strategic reason for not seeking a plea agreement.

## III.

### BUCCI HAS SHOWN PREJUDICE AND ANY ISSUES THAT MIGHT REMAIN SHOULD BE RESOLVED THROUGH A HEARING

Bucci was prejudiced by his trial counsel's ineffective representation. To show prejudice the defendant need not prove definitely that the outcome would be different, but only a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 693-94.  A reasonable probability is one that is "sufficient to undermine confidence in the outcome," and requires a showing of less than a preponderance of evidence.  *Id.*

Bucci was prejudiced by his trial counsel's failure to seek a plea bargain including the fact that the government maintained the § 851 prior felony information (*see* J.A. 10-DKT:46), which is routinely dismissed in plea dispositions, and Bucci received additional enhancements for brandishing a firearm and role in the offense which are also routinely negotiated as well.  At a minimum, Bucci was not able to reduce his guidelines by three points for acceptance of responsibility under U.S.S.G. §3E1.1 which would have been available with a plea agreement.

Furthermore, Bucci has shown a reasonable probability that but for counsel's errors, he would have accepted a plea bargain—he tried at least twice to get his counsel to initiate plea negotiations. Should additional facts be required, this Court should remand the case back to the district court to determine what plea would have been offered by the government had negotiations been initiated by defense counsel, and whether Bucci would have accepted that plea. *See Lafler*, 132 S.Ct. at 1389 (considering proper remedies with ineffective assistance of counsel during plea negotiations and requiring prosecutor to reoffer plea to defendant and see if defendant accepts it); *see also Arave v. Hoffman*, 455 F.3d 926 (9th Cir. 2006) (judgment vacated in part) 552 U.S. 117 (2008) (releasing the defendant unless within a reasonable time the State offers Hoffman a plea agreement with the same material terms offered in the original plea agreement).

The government erroneously argues that the new facts are insufficient because they do not weigh on whether a fact finder would find him guilty. That is not the appropriate standard in an ineffective assistance claim as set out in detail in Bucci's appellant brief. Again, to hold so would be to annihilate the notion that a defendant is entitled to effective assistance of counsel for plea purposes and discovery of that ineffectiveness is the result of the very ineffectiveness itself—misrepresenting plea negotiations to the defendant.

The government spends much time on the speculation of the plea agreement. The government is confusing this case with cases where there is a plea agreement that is not communicated to the defendant. Here we have a different situation that is not directly addressed by the government: the ineffectiveness of an attorney who fails to engage in plea discussions with the government despite being requested to do so repeatedly by the defendant and then misrepresenting those discussions to the defendant. Accordingly, the specific enumerated factors in *Lafler v. Cooper*, 132 S.Ct. 1376 (2012) for when a plea is offered and not communicated cited by the government (Gov. Br. at 14) are not directly applicable to Bucci's situation. Nor does Bucci rely on *Lafler* for those purposes. *See* Bucci's Br. at 19-21. The government's suggestion that he must meet those standards is incorrect.

The prejudice Bucci can show is different. Bucci was prejudiced by his trial counsel's ineffective representation in ignoring his client's specific and repeated demands to seek a plea deposition. To show prejudice the defendant need not prove definitely that the outcome would be different, but only a "reasonable probability" of a different result. *See Strickland v. Washington*, 466 U.S. 688, 693-94 (1984). A reasonable probability is one that is "sufficient to undermine confidence in the outcome," and requires a showing of less than a preponderance of evidence. *Id.*

Bucci was prejudiced by his trial counsel's failure to seek a plea bargain

including the fact that the government maintained the § 851 prior felony information, which is routinely dismissed in plea dispositions, and Bucci received additional enhancements for brandishing a firearm and role in the offense which are also routinely negotiated as well.  At a minimum, Bucci was not able to reduce his guidelines by three points for acceptance of responsibility under U.S.S.G. § 3E1.1 which would have been available with a plea agreement.

The government claims these are "vague" statements (Gov. Br. at 15) but they are not vague but very specific.  The government does routinely agree not to file or to dismiss an 18 U.S.C. § 851 in plea negotiations.  Indeed, the government never denies this statement but merely states that it is "vague" which is inaccurate.  It is certainly a reasonable probability, and nothing the government has countered with changes that reasonable probability, thus Bucci meets that standard. It is also a factual determination that should be left to a hearing if there is any doubt as to that fact as set out in more detail in Bucci's main brief.  Again, to the extent there is any factual issue, it should be resolved through hearing.

CONCLUSION

For the foregoing reasons, the Court should reverse the decision of the district court and grant Bucci's petition for habeas corpus, and vacate the conviction and remand the case back to the district court.

Anthony Bucci
By His Attorney

/s/ Inga L. Parsons
Inga L. Parsons
Attorney at Law
3 Bessom Street, No. 234
Marblehead,  MA  01945
781-581-2262 (o)
781-842-1430 (f)
781-910-1523 (c)
Inga@IngaParsonsLaw.com

CERTIFICATE OF SERVICE

I hereby certify that this document, which was filed on this date through the ECF system, will be sent electronically on this date to AUSA Randall Kromm, counsel for the Appellee in this matter.

Date: November 17, 2015        /s/ Inga L. Parsons
                               Inga L. Parsons

**Certificate of Compliance With Rule 32(a)** Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5378 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2000 in fourteen point Times New Roman.

/s/ Inga L. Parsons
Inga L. Parsons